Commonwealth *v.* Devlin, Appellant.

Argued December 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John W. Packel,* Assistant Defender, with him *Anne F. Johnson,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*James J. Wilson*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., March 24, 1972:

Defendant was convicted, after trial without jury, of the crime of possession of narcotic drugs. He has appealed to this court contending that the refusal of his pretrial motion to suppress the physical evidence of the drugs was error as that evidence was either the fruit of an illegal arrest made without probable cause or the direct product of a warrantless search made without probable cause.

We do not agree. Admittedly, where defendant's arrest is lawful, being based on probable cause, the search incident to that arrest is likewise lawful: *Commonwealth v. Friel*, 211 Pa. Superior Ct. 11, 14.[1]

The record in this case supports a finding that the officers acted with probable cause. Officer John Boucher testified that on February 18, 1971, at approximately 5:25 P.M., an informant advised him there was a man in the Pink Squirrel Bar at 1624 Ridge Avenue selling narcotics and that the man had refused to sell him drugs on credit. The informant gave a detailed description of the man as to color, height, and clothes. Officer Boucher and two other police officers

---

[1] The court there summarized: "It is clear that (1) police may arrest without a warrant where they have probable cause to believe the person arrested has committed a felony, (2) they may make a valid search without a warrant, incident to such arrest, and (3) the validity of such a search depends on the validity of the arrest and the extent of the search. United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L. ed. 653 (1950) ; Commonwealth v. Negri, 414 Pa. 21, 198 A. 2d 595 (1964)."

went to the Pink Squirrel Bar and there observed the defendant, who fitted informant's description in every detail, sitting at the bar. Officer Boucher testified that as they approached, defendant reached into his left-hand pocket, so they grabbed his arm and found three bags of a mixture later identified as heroin and quinine hydrochloride, the possession of which constituted the basis of his conviction.[2]

Defendant, in contesting the validity of the arrest and the subsequent search, does not raise any issue as to the informant's reliability but questions the sufficiency of the information supplied by him to constitute probable cause. Defendant would interpret the informant's statement that defendant would not sell to him on credit as a refusal by defendant to sell altogether, and thus argues that this refusal reported by informant was more consistent with innocence than with guilt. We cannot agree. The informant's statements, taken in their proper context, signified that the defendant was willing to sell but not willing to sell on credit. Officer Boucher, therefore, properly interpreted the informant's statements to mean defendant was selling drugs. It must be kept in mind that in determining the sufficiency of the statements to warrant a finding of probable cause for the arrest, we do not apply strict evidentiary rules requisite to a finding of defendant's guilt. As so ably stated by Judge Learned HAND, in speaking for the court in *U. S. v. Heitner*, 149 F. 2d 105, 106: "It is well settled that an arrest may be made upon hearsay evidence; and indeed, the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the ac-

---

[2] Also found were five sodium secobarbital capsules which defendant testified belonged to his wife, being prescribed for her by a doctor. Defendant was found not guilty of the criminal charge based on his possession of these capsules.

cused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties."

At the time of trial, the defendant must be acquitted if the evidence raises a reasonable doubt of his guilt in the minds of the jurors. At the time of his arrest, however, the officers are dealing only with "probabilities" of guilt. As stated in *Brinegar v. U. S.*, 338 U. S. 160, 175, 69 S. Ct. 1302, 1310: "In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

That reasoning was applied by our Pennsylvania Supreme Court in *Commonwealth v. Bosurgi*, 411 Pa. 56 (1963), with the result that this court's decision (198 Pa. Superior Ct. 47) was affirmed and probable cause for defendant's arrest was found to exist under a fact situation similar to that here involved: "Taking into consideration all the surrounding circumstances we are of the view that the arrest of Bosurgi, even though without a warrant, was valid and based on the police officers' 'reasonable' and 'probable' cause to believe that he had committed the felony of burglary. Viewed practically and from the viewpoint of reasonable men, these police officers knew that a store had been burglarized and that watches were part of the 'loot' taken; they went around the neighborhood of the store requesting persons in that area to notify the police at *detective*, not police, headquarters if any person was seen peddling watches; a call was received at detective headquarters, a careful description was given of a man who was in the neighborhood of the burglarized store attempting to sell watches; the police found Bosurgi, answering in every detail the descrip-

tion given of the man attempting to sell watches, in a taproom directly across the street from the burglarized store. Under these and all the attendant circumstances we agree with the majority of the Superior Court that 'the officer had probable cause and reasonable grounds to believe that [Bosurgi] had committed the crime and to arrest defendant.' (p. 50).

"The arrest, in our view, being valid, the officers had not only the right, but the duty, to search Bosurgi."

It is our conclusion in the instant case also that the officers did have probable cause to arrest defendant and that the evidence was properly procured during a search incident to a lawful arrest. There was no error therefore in the refusal of the motion to suppress or in the admission of the evidence at trial.

Judgment of sentence affirmed.