J-S04005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| HAMID YILLAH | : | |
| | : | No. 1768 EDA 2024 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003511-2021

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 25, 2025**

Appellant, Hamid Yillah (Appellant), appeals from the judgment of sentence following his bench trial convictions for possession with intent to deliver narcotics (PWID), possession of narcotics by a person not registered, persons not to possess a firearm, carrying a firearm without a license, and carrying a firearm on public streets in Philadelphia.[1]  We affirm.

We briefly summarize the facts of this case as follows. On December 4, 2020, Officer Ricardo Rosa, the primary witness at the suppression hearing, and his partner, Officer Roher[2] were surveilling an area around 6200 Woodland

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16); 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

[2]  Officer Roher's first name is not apparent from the notes of testimony.

Avenue in Philadelphia, Pennsylvania. N.T., 3/22/2022, at 9-11. Officer Rosa saw a black man, later identified as Appellant, wearing a black and white Philadelphia 76ers jacket, green pants, and a gray knit hat.[3] *Id.* at 11. A second black male, later identified as Joseph Jordan (Jordan), exited a gray Mazda and approached Appellant. *Id.* at 11. After a brief conversation, Jordan handed an undetermined sum of cash to Appellant in exchange for "small pink objects" that Appellant removed from his pocket. *Id.* Jordan reentered the gray Mazda and left the area. *Id.* Based upon his training and experience, Officer Rosa believed that he witnessed "[a] narcotics transaction." *Id.* at 12. Officer Rosa relayed this information *via* police radio to his "backup officers" who were "in constant communication" with one another and "throughout [the] entire surveillance." *Id.* Roughly five minutes later, Officer Howe,[4] a third officer, stopped and arrested Jordan. *Id.* In a search incident to arrest, police recovered, from Jordan's person, one pink flip-top tube that contained a green, weedy substance. *Id.* Meanwhile, Officer Rosa briefly lost sight of Appellant behind a trolley, but Officer Roher, dressed in plain clothes, entered a nearby corner store and found Appellant therein. *Id.* at 24-25. Appellant said directly to Officer Roher, "I have that gas. Gas out." *Id.* at 13. Officer Roher replied, "I'm good," bought something from

_____

[3] Officer Rosa identified Appellant at trial. On the day in question, Appellant was wearing a jacket "similar to the one" he was wearing in court. N.T., 3/22/2022, at 11.

[4] Officer Howe's first name is not apparent from the notes of testimony.

the store and then left. *Id.* Based upon his training and experience, Officer Rosa understood "gas" to be another name for marijuana and that Appellant "was advertising what he had for sale." *Id.* at 14. The foregoing information was relayed by radio communications amongst the officers who investigated and subsequently placed Appellant under arrest. *Id.* at 15. In a search incident to Appellant's arrest, the police recovered 10 green jars containing marijuana, $114.00 in cash, a loaded .38 caliber revolver with the serial number obliterated, and additional ammunition from Appellant's pocket. *Id.*

Procedurally, the case progressed as follows. On August 13, 2021, Appellant moved to suppress evidence seized from his person at the time of arrest. On March 22, 2022, the trial court held a suppression hearing, following which the trial court denied Appellant relief. *Id*. at 38. Appellant argued that the police lacked reasonable suspicion or probable cause to detain him. *Id*. at 30-34. The Commonwealth argued that the arresting officer had probable cause to make an arrest, and that the subsequent search was incident to that arrest.[5] *Id*. at 35-37. The trial court agreed that police testimony at Appellant's suppression hearing demonstrated probable cause to believe that Appellant was engaged in criminal activity before he was subjected to custodial detention. In reaching this conclusion, the court pointed out that police investigators (before Appellant's arrest) observed

_____

[5] This was not the Commonwealth's exclusive argument. However, it was a focal point of the trial court's decision when it became clear there was a dispute over the details of the arrest. *See* N.T., 3/22/2022, at 34-35.

Appellant engage in a hand-to-hand narcotics transaction and later recovered, from the buyer, Jordan, a pink container holding narcotics. **See id**. at 38. The court also noted that Appellant solicited Officer Roher to purchase narcotics before the arrest. **Id**. at 38. Ultimately, these facts showed, under the totality of the circumstances, that the Commonwealth established probable cause to support Appellant's arrest and the ensuing search of his person pursuant to that arrest.

After the denial of suppression, the trial court held a bench trial on November 2, 2022, wherein Appellant was found guilty of all charges. On January 4, 2023, the trial court sentenced Appellant to an aggregate sentence of five to 11 years of imprisonment followed by two years of reporting probation. This appeal resulted.[6]

Appellant presents the following question for appeal:

_____

[6] Appellant failed to file a timely notice of appeal, however, his appellate rights were reinstated *nunc pro tunc* on June 21, 2024 and, thereafter, Appellant filed a notice of appeal on June 24, 2024. On June 24, 2024, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on June 25, 2024. On August 8, 2024, the Honorable Donna M. Woelpper issued a letter in *lieu* of an opinion pursuant to Pa.R.A.P. 1925(a), explaining that she had been reassigned the matter because the suppression judge who presided over the original proceedings "now sits as a District Court Judge in Federal Court for the Eastern District of Pennsylvania." Letter in *Lieu* of Rule 1925(a) Opinion, 8/8/2024, at *1 (unpaginated). In addition, Judge Woelpper's letter stated that the reasons for the denial of Appellant's suppression motion "[can] be found in the notes of testimony from March 22, 2022 at [pages] 37-39." **Id.**

Whether the lower court erred and abused its discretion in denying [Appellant's] motion to suppress evidence seized from his person and property on December 4, 2020 by court order dated March 23, 2022 since the warrantless search was invalid and not based on probable cause which violated [Appellant's] Fourth Amendment rights under the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution.

Appellant's Brief at 8 (unnecessary capitalization, numbering, and sub-issues omitted). Appellant argues the trial court erred or abused its discretion by refusing to grant suppression. *Id.* at 31. At the core of his appeal, Appellant argues that the officer who arrested him did not have a warrant, there was no recognized exception to the requirement for a warrant or exigent circumstances, and therefore any incriminating evidence found incident to the search should be suppressed. *Id.* at 13. Appellant argues that "[t]here was no probable cause to support [his] detention and search[.]" *Id.* at 20. Additionally, Appellant claims that: 1) there were no circumstances which justified a protective, pat down search for officer safety; 2) the seized firearm was not in plain view; and, 3) Appellant did not consent to the search. *Id.* at 14-18.

Our standard of review is as follows:

[T]he standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those]

findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

We have recognized:

The law recognizes three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a **Terry** stop[7] and (3) a custodial detention.

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.

In contrast, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion[,] it requires reasonable suspicion of unlawful activity.

Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

**Commonwealth v. Jefferson**, 256 A.3d 1242, 1247-1248 (Pa. Super. 2021), *appeal denied*, 268 A.3d 1071 (Pa. 2021) (most citations omitted).

"Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." **Commonwealth**

---

7 **See Terry v. Ohio**, 392 U.S. 1 (1968).

*v. Martin*, 101 A.3d 706, 721 (Pa. 2014). "[W]e require **only a probability**, and not a *prima facie* showing, of criminal activity [and] we apply a totality of the circumstances test." *Commonwealth v. R. Williams*, 2 A.3d 611, 616 (Pa. Super. 2010) (*en banc*) (internal citations and quotation marks omitted; emphasis in original). "Where [an] arrest is lawful, [] based [up]on probable cause, the search incident to that arrest is likewise lawful[.]" *Commonwealth v. Devlin*, 289 A.2d 237, 238 (Pa. Super. 1972) (*en banc*). Finally, "when a close group of [police] officers are functioning [and communicating] as a team, the probable cause inquiry is based on an assessment of the collective knowledge of the team as a whole." *Commonwealth v. Yong,* 177 A.3d 876, 880 (Pa. 2018).

We discern no error of law or abuse of discretion in the order denying Appellant's motion to suppress in this matter. The trial court correctly found that the officers had probable cause to arrest Appellant, and that the subsequent search was incident to that arrest. Here, the arresting officer had the requisite, collective probable cause to arrest Appellant and was, therefore, entitled to search him incident to that arrest. Officer Rosa, an experienced law enforcement official, observed an exchange of cash for an object in a location known for narcotics trafficking. Thereafter, narcotics were recovered from the buyer, Jordan, and the container seized from Jordan matched a prior police description based upon the observed hand-to-hand transaction. Separately, Appellant, unprompted, solicited an undercover officer to buy drugs while in a convenience store. Taken together, these circumstances were

enough to establish probable cause that a narcotics transaction had occurred. Accordingly, we will not usurp the suppression court's determination that suppression was not warranted. **See Jones**, 988 A.2d at 654. (finding that an appellate court's standard of review considering an appeal to the denial of a suppression motion is limited to "determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.").

Finally, we reject Appellant's suggestion that the police conducted a pat down for their safety, or that the firearm seized was not in plain view, or that Appellant failed to consent to the search. Because the police had probable cause to arrest Appellant, as set forth at length above, we conclude the challenged search was incident to a lawful arrest and, thus, the search was likewise lawful. The trial court found that police had probable cause to arrest Appellant based on the collective communication between them and the Commonwealth was entitled to present the seized evidence from the subsequent search at trial. Based upon our standard of review, applicable law, and examination of the certified record in this matter, we discern no abuse of discretion in the trial court's decision to deny Appellant's motion for suppression. Accordingly, Appellant's sole appellate claim does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/25/2025</u>